

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 4, 2014

**Via Electronic Mail**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Chambers 1950
New York, New York 10007

    Re:    *United States* v. *David Delva*, S2 12 Cr. 802 (KBF)

Dear Judge Forrest:

    The Government respectfully submits this letter in advance of trial in the above-captioned matter, to advise the Court of the Government's position on the outstanding issues and motions to date.

    I.    **Defendant's Third Motion *in Limine*: Delva DNA Sample Chain of Custody**

    On August 29, 2014, the defendant filed a motion seeking "an inquiry ... to ensure the [DNA] sample's chain of custody was intact and to ensure it was not tainted." (Def. 08/29/14 Ltr. 1). Defense counsel has since informed the Government that this issue is moot, in light of additional material subsequently provided by the Government.

    II.    **Defendant's Utilization of a Psychiatric Expert**

    On July 7, 2014, the defense provided the Government with notice that it intended to call as an expert witness Dr. Karen Rosenbaum, a forensic psychiatry expert, and indicated that "[h]er testimony will be based upon medical records of the witness and/or testimony elicited at trial." On July 14, 2014, the defense provided a supplement to its expert notice, and submitted a letter explaining how it intends to utilize the testimony of Dr. Rosenbaum. Specifically, this supplemental notice indicated that: "Dr. Rosenbaum's testimony will be used to aid the jury, by explaining entries in [Gregory Accilien's medical records] which use medical terminology, abbreviations and coding to document the diagnosis, history, symptoms and treatment of Mr. Accilien's mental illness." (Def. 07/14/14 Notice at 1). The notice also indicated that "Dr.

Rosenbaum will also be asked to translate or define ... terms or abbreviations [contained in Mr. Accilien's medical records]." (Def. 07/14/14 Notice at 4). On July 17, 2014, the defense submitted a follow-up letter, stating its contention that "the testimony of a psychiatrist – which provides and then explains a DSM definition – will aid the jury in better understanding the meaning of a diagnosis as opposed to simply providing the jury with a copy of the DSM definition." (Def. 07/17/2014 Ltr.).

The Government renews its motion *in limine* to preclude the proposed expert, as her testimony would be inadmissible evidence.[1] Fed. R. Evid. 702; *see Kumho Tire Company, Inc. v. Carmichael*, 526 U.S. 137, 137 (1999) (Court must determine whether expert's reasoning and methodology underlying her testimony is valid, and whether that reasoning or methodology was applied reliably to the facts, so as to be relevant and helpful to the jury). Here, the proposed expert appears to be drawing no conclusions, nor opining on any facts in the record, and indeed, she has never even examined Mr. Accilien. Rather, she will testify <u>generally</u> concerning terms, abbreviations, and diagnoses contained in Mr. Accilien's medical records. This is plainly improper under Rules 401, 403, and 608 of the Federal Rules of Evidence.

As an initial matter, Mr. Accilien's medical records are rank hearsay. More importantly, and as discussed in greater depth in the Government's July 8, 2014 motion *in limine*, allowing such collateral testimony would "produce a trial within a trial," on a witness's credibility and "may cause [the] jur[ors] to surrender their own common sense in weighing testimony." *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973), *cert. denied*, 416 U.S. 959 (1974) (precluding expert psychiatric testimony, noting that a witness's credibility is for the jury to determine). *See also United States v. Daileda*, 229 F. Supp. 148, 153-54 (3d Cir. 1965) (excluding expert testimony from an expert who never examined or treated the witness, noting: "It may well open a Pandora's box of diversion, confusion, and remoteness, and the remedy may be more dangerous than the disease it seeks to cure."); *United States v. Rohrer*, 708 F.2d 429, 434 (9th Cir. 1983).

The proposed expert testimony here (which appears to be nothing more than acting as a live glossary of medical terms) is an effort to supplement the defense's other efforts to impeach Mr. Accilien, attack his credibility, and otherwise comment on his testimony with clearly extrinsic evidence. Such extrinsic evidence from a forensic psychiatrist is not only irrelevant, but is inadmissible under Federal Rule of Evidence 608. Furthermore, as discussed *supra*, such testimony regarding the complexities of personality disorders and traits will distract, mislead and confuse the jurors. Finally, the probative value of the proposed expert's testimony is minimal at best, because the Government anticipates that Mr. Accilien will admit in front of the jury that he suffers from certain mental illness, takes medications, and, at times in the past, has experienced auditory hallucinations. *See, e.g., United States v. Wade*, 356 F. App'x 704, 710 (5th Cir. 2009) ("Dr. Zhao's testimony concerning [witness's] hallucinations while she was hospitalized was only cumulative, and therefore under Rule 403, properly excluded").

---

[1] The Government concedes that the expert notice is no longer untimely, given the adjournment of the trial, but renews its motion on all other grounds, largely as stated in its July 8, 2014 Motion *in Limine*.

2

### III.    Male Victim's Immigration Issue

In its preliminary Opinion, the Court requested a proffer from the Government as to whether the Male Victim may potentially be seeking to obtain assistance from the immigration authorities to adjust his status as a result of his assistance in this case, because "[i]f he is, then it may well be that the collection of [his prior] acts goes to a question of possible bias – that is, how big a hole he needs to dig himself out of with his assistance to the U.S. Government (arguably) in order to obtain the immigration assistance he would like." (Draft Opinion 15-16).

The Government has made no promises to the Male Victim concerning his immigration status. Nonetheless, after speaking with immigration counsel for the Male Victim, it is the Government's understanding that the Male Victim, a foreign national, intends to apply for so-called "U Nonimmigrant Status" ("U Visa"), which is set aside for victims of crimes who have suffered substantial mental or physical abuse and are willing to assist law enforcement and government officials in the investigation or prosecution of the criminal activity. One of the statutory eligibility requirements for a petition for a U Visa[2] is that the individual must have been, is being, or is likely to be, helpful in the investigation or prosecution of the crime. *See* 8 CFR § 214.14(b)(3). Indeed, a petition for a U Visa must contain a certification of helpfulness (Form I-918, Supplement B) from a certifying U.S. law enforcement agency, that demonstrates that the petitioner "has been helpful, is being helpful, or is likely to be helpful" in the investigation or prosecution of the criminal activity. Importantly, the certifying official must also attest that he or she provided no promises regarding the alien's ability to obtain a U Visa from immigration authorities.

Counsel for the Male Victim has had discussions with counsel for the Government as to whether the Government would be willing to prepare such a certification, but there is no agreement regarding the Government's assistance with regards to a certification. Here, the Government has not submitted such a certification for the Male Victim, and has not promised to do so in the future. Indeed, as noted above, the Male Victim is expected to testify that the Government has made him no promises concerning his immigration status, and that his testimony is not contingent on the expectation of receiving such a certification of helpfulness from the Government.

The Government respectfully submits that because there are no agreements between the Male Victim and the Government concerning his immigration status, and more importantly,

---

[2]   The other three statutory eligibility requirements are: (1) the individual must have suffered substantial physical or mental abuse as a result of having been a victim of a qualifying criminal activity (such as kidnapping), (2) the individual must have information concerning that criminal activity, and (3) the criminal activity violated U.S. laws. An alien being investigated or prosecuted for a qualifying criminal activity is excluded from being recognized as a victim of that criminal activity; however, this exclusion does not apply to an alien who committed crimes other than the one under investigation or prosecution, even if the crimes are related. *See* 8 CFR § 214.14(a)(14)(iii).

because he has no expectation of receiving any such benefit, the Court should find that the Male Victim cannot be cross-examined on his prior acts.

                                      Respectfully submitted,

                                      PREET BHARARA
                                      United States Attorney

By:                 /s/
            Justina L. Geraci
            Ryan P. Poscablo
            Assistant United States Attorney
            (212) 637-2468 /-2634

cc:      Jeffrey G. Pittell, Esq.   (via electronic mail)
          Maher & Pittell, LLP