UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                        :

UNITED STATES OF AMERICA        :

                                       :         12 Cr. 802 (KBF)

   - v -                          :

                                       :        OPINION & ORDER

DAVID DELVA,                :

                                       :

               Defendant.   :

                                       :
-----------------------------------------------------------X
KATHERINE B. FORREST, District Judge:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 0 2014

      On October 8, 2013, a Grand Jury sitting in the Southern District of New York returned Indictment 12 Cr 802 (ECF No. 50) against defendant David Delva; that Indictment was superseded on June 12, 2014 (ECF No. 146). Defendant faces trial on eight counts: robbery conspiracy (Count One), robbery (Count Two), kidnapping conspiracy (Count Three), kidnapping (Count Four), brandishing a firearm during a crime of violence (Count Five), narcotics conspiracy (Count Six), a firearms offense in connection with a drug crime (Count Seven), and felon in possession of a firearm (Count Eight). Trial began on September 8, 2014.

      Before this Court are motions in limine filed by both parties. The defendant has moved to preclude testimony by an alleged victim of the offense – identified as "JA" – of a sexual assault and urination upon her, alleged to have occurred during the course of the robbery and kidnapping offenses charged in Counts One through Four. (ECF No. 139.) He also seeks an Order excluding certain "other act" evidence pursuant to Federal Rule of Evidence 404(b). (ECF No. 142.) Finally, defendant filed a motion seeking an inquiry into the DNA sample's chain of custody (ECF No.

180), but later informed the Government that this issue is moot (ECF No. 181).  The
Government opposes the motion as to the sexual assault and urination and has
represented that it is seeking to admit some but not all of the "other act" evidence –
specifically what are referred to as Acts One through Four, Eight, and Ten.  (ECF
No. 149.)  Each of the four acts relates to prior robberies the defendant or others are
alleged to have committed.

The Government has itself affirmatively moved for an in limine ruling to
preclude cross examination of prior criminal acts by a male victim ("Male Victim") of
the robbery and kidnapping who is expected to testify at trial and certain criminal
acts by a cooperating witness ("CW"), who is also expected to testify.[1]  (ECF No.
138.)  It also seeks to preclude the testimony of a proposed expert regarding the
mental illness of the CW.  (ECF No. 154.)

The Court provided a draft of this Opinion to counsel prior to an initial "final
pretrial conference" on July 10, 2014.  (ECF No. 157.)  That draft contained the
same rationale and outcome as that set forth herein, with the exceptions of
modifications to the portions relating to the defendant's proposed expert.

---

[1] The Government has also moved to preclude cross examination of prior arrests of the CW.  The
defendant has represented that he does not intend to cross examine the witness on such arrests.
That portion of the motion is therefore moot.  In addition, the Government moved to preclude cross
examination on certain topics of an individual referred to as "Witness 1," but has since notified the
Court and defendant that it no longer intends to call Witness 1.  Accordingly, that portion of the
motion is also moot.

I.    FACTUAL BACKGROUND[2]

The defendant is alleged to have participated in a brutal Hobbs Act robbery and kidnapping that occurred over a period of days spanning September 2 through 4, 2012, in the Bronx, New York. The Government contends that at trial it will prove the following series of events:

At approximately 10:30 p.m. on September 2, 2012, a woman referred to as "JA" returned home to her apartment in the Bronx, New York. In the hallway of her building, she was confronted by at least two armed men who pushed her into her apartment at gunpoint; they were joined by others at various points. JA was immediately bound, gagged, beaten, and she was subsequently raped. The alleged robbers ransacked the apartment looking for money and drugs; when none were found, they forced JA to call her then-boyfriend, a drug dealer (whom they believed had or had access to money) and request that he come to the apartment (he is refused to herein as "Male Victim"). JA was held captive for over two days before she reached her boyfriend and he came to the apartment. When the boyfriend (referred to herein as the "Male Victim") arrived, he was beaten with fists and a gun, stabbed, bound, and blindfolded. Despite the blindfold, the Male Victim retained a limited ability to see what was happening. He was forced to give the robbers keys to a second apartment in which he stored cash.

---

[2] The Court relies upon the facts included in the parties' papers. Many of those facts are based on testimony from the Fatico hearing held on January 15, 2014 with respect to two alleged coconspirators. The discussion herein is therefore based on similar facts the Court anticipates will be developed at trial. That each statement not prefaced with the word "alleged" should therefore not be taken as the equivalent of a finding or necessarily reflective of an admission.

The CW, who was identified by the Male Victim as one of the robbers, later identified by the CW as having been a participant.  The CW pled guilty pursuant to a cooperation agreement and is expected to testify at trial, despite the fact that a message was passed by an inmate at the MCC to him warning him not to testify.

During a protective sweep at the apartment of the CW (incident to the CW's arrest pursuant to a warrant), law enforcement recovered a gun and drugs from an open closet; these items were identified as belonging to Delva.[3]  Delva was then taken into custody.  During a search incident to his arrest, crack cocaine was recovered from his person.

a. <u>The Male Victim's Criminal Past</u>

The Male Victim is expected to testify at trial pursuant to an immunity agreement.  For a number of years, including as recently as one year ago, the Male Victim was a large-scale marijuana dealer, dealing in pound quantities on a weekly basis; he did not pay taxes on the proceeds from such sales.  He is not a United States citizen and was deported in 2001 and returned illegally in 2006 by using false identification documents; subsequent to that time, he lived under aliases to avoid detection.  The Government intends to elicit these facts on direct examination.  The Government seeks to preclude cross examination, however, of the following:

1. Acts of domestic violence against his then-girlfriend, JA, including one incident just prior to the events of September 2 through 4, 2012, in which he discharged a firearm;

---

[3] Delva moved to suppress the gun, drug and cell phone evidence.  The Court held an evidentiary hearing on that motion.  The Court denied the motion in a written decision dated March 11, 2014. (ECF No. 126.)

2. Drug dealing that predates the Male Victim's 2001 deportation and goes back to at least 1988. He was arrested in 1998 for, among other crimes, a drug offense, subsequently agreed to cooperate, and was sentenced to time served. Thereafter he was deported to Jamaica (where he remained until 2006).

3. His participation in several large cocaine deals prior to his arrest in 1998.

4. A 1988 arrest involving physical altercation with another man in which he hit the man over the head with a baseball bat.

5. A 1988 conviction for drug possession, 1992 for drug distribution, and 2001 for his role in a continuing criminal enterprise, as well as cocaine, marijuana, opium, and money laundering conspiracies.

6. The Male Victim's cooperation in connection with his 1998 arrest.

7. A 1996 arrest for bail jumping bail (these 1996 charges were eventually dismissed).

8. The discovery in connection with his 1998 arrest of possession of a device used to steal the identity of one cell phone account holder to another cell phone (to allow for unauthorized calls and charges).

b. Issues Relating to the CW

The CW has a history of mental health treatment as well as a prior criminal record. The Government intends to elicit the CW's criminal past and mental health history on direct examination. The Government has raised two issues in limine

5

with regard to the CW, one relating to a proposed expert on his mental health and the second relating to an incident for which he was neither arrested nor prosecuted.

The defendant has subpoenaed his medical records from various facilities. On July 7, 2014, the defendant notified the Government that he intended to call an expert witness, Dr. Karen Rosenbaum, on topics relating to mental health issues. The Government moved to preclude the proposed expert on the basis that notice was untimely and incomplete, and that to the extent that the proposed expert would testify concerning the credibility of the defendant, such testimony would invade the province of the jury and should otherwise be precluded under Rules 401, 403, and 608 of the Federal Rules of Evidence. (ECF Nos. 154.) At the conference on July 10, 2014, the defendant clarified Dr. Rosenbaum's proposed testimony as limited to providing definitions of medical terms the defendant anticipated would be necessary as a result of certain medical evidence.[4] The Court discussed with the parties the possibility of a stipulation as to any such definitions, but the defendant represented that he planned to call Dr. Rosenbaum as a witness. On September 4, 2014, the Government renewed its motion in limine to preclude Dr. Rosenbaum based on the grounds largely stated in its July 8, 2014 motion, but conceding that the expert notice was no longer untimely. (ECF No. 181.)

The Government also seeks to preclude cross examination on an incident in which he was having sex with a woman close to a co-conspirator and she pulled a knife on him, at which point they stopped. The CW was not prosecuted for this

---

[4] The medical evidence relates to the psychiatric history for a Government witness, Gregory Accilien.

offense. It is unclear whether the woman has or would assert that the CW assaulted her.

## II. STANDARD ON A MOTION IN LIMINE

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (internal quotation marks and citation omitted); accord Highland Capital Mgmt., L.P., v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008). Rule 104 of the Federal Rules of Evidence requires that a court make a preliminary determination of the admissibility of all evidence. Fed. R. Evid. 104. "The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Ozsusamlar, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006) (citations omitted).

In limine rulings occur pre-trial, and that fact has some significance. The evidence at trial may come in differently than anticipated, altering the solidity of the proffered basis for a pre-trial ruling. This Court therefore invites parties who believe that the factual record developed at trial supports a revised ruling to bring such an application in a timely manner.

## III. RELEVANT EVIDENTIARY STANDARDS

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more

probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Rule 402 provides that all relevant evidence is admissible, except as otherwise

provided by the Federal Rules of Evidence or Act of Congress. Fed. R. Evid. 402.

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay,

waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

> Rule 404(b) provides:
>
> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is
> not admissible to prove a person's character in order to show
> that on a particular occasion the person acted in accordance
> with the character.
> (2) Permitted Uses; Notice in a Criminal Case. This evidence
> may be admissible for another purpose, such as proving motive,
> opportunity, intent, preparation, plan, knowledge, identity,
> absence of mistake, or lack of accident. . . .

Fed. R. Evid. 404(b).

"It is well established that evidence of uncharged criminal activity is not

considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the

same transaction or series of transactions as the charged offense, if it is inextricably

intertwined with the evidence regarding the charged offense, or if it is necessary to

complete the story of the crime on trial." United States v. Gonzalez, 110 F.3d 936,

942 (2d Cir. 1997) (alterations and internal quotation marks omitted); United

States v. Kassir, No. 04 Cr. 356 (JFK), 2009 WL 976821, at *2 (S.D.N.Y. Apr. 9,

2009), aff'd, United States v. Mustafa, 406 F. App'x 526 (2d Cir. 2011). Such

evidence is direct evidence of a crime. See Kassir, 2009 WL 976821, at *2. A Rule

8

404(b) analysis is, however, prudent where it is not manifestly clear that the evidence in question is proof of the charged crime. Id.

The Supreme Court has stated, "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." United States v. Huddleston, 485 U.S. 681, 686 (1988).

The Second Circuit evaluates Rule 404(b) evidence under an inclusionary approach that allows evidence for any purpose other than to show a defendant's criminal propensity. United States v. McCallum, 584 F.3d 471, 475-76 (2d Cir. 2009) (finding that the district court's admission of the defendant's prior drug convictions, offered to show his intent to deal drugs and his knowledge of drug dealing, was error because the district court failed to conduct a Rule 403 analysis; the Second Circuit stated, "evidence of prior convictions merits particularly searching, conscientious scrutiny," because such evidence can lead to "generalized reasoning about a defendant's criminal propensity"); United States v. Paulino, 445 F.3d 211, 221-23 (2d Cir. 2006); United States v. Garcia, 291 F.3d 127, 136, 138-39 (2d Cir. 2002) (finding the district court abused its discretion in admitting evidence of a 12-year-old prior drug conviction where its only proffered similarity was that it involved cocaine). Courts may therefore admit evidence of other acts by the defendant if the evidence is relevant to an issue at trial other than the defendant's character and if the risk of unfair prejudice does not substantially outweigh the

9

probative value of the evidence. <u>United States v. Morrison</u>, 153 F.3d 34, 57 (2d Cir. 1998); <u>see also</u> <u>Garcia</u>, 291 F.3d at 136.

This inclusionary approach does not invite the Government "to offer, carte blanche, any prior acts of the defendant in the same category of crime." <u>McCallum</u>, 584 F.3d at 475 (quoting <u>Garcia</u>, 291 F.3d at 137).

In considering the admissibility of evidence pursuant to Rule 404(b), a court must consider the following:

- Is the evidence offered for a proper purpose—that is, does it go to something other than the defendant's character or general criminal propensity?

- Is the evidence relevant?

- Does the probative value of the evidence substantially outweigh the danger of unfair prejudice?

- Has the court administered an appropriate limiting instruction?

<u>Garcia</u>, 291 F.3d at 136.

Among the "proper purposes" for presenting evidence of extrinsic acts is knowledge. <u>See</u> <u>McCallum</u>, 584 F.3d at 475; <u>United States v. Teague</u>, 93 F.3d 81, 84 (2d Cir. 1996). Another "legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal enterprise developed; this sort of proof furnishes admissible background information in a conspiracy case" and can assist the jury in understanding the relationship of trust between the coconspirators. <u>United States v. Pipola</u>, 83 F.3d 556, 566 (2d Cir. 1996); <u>see also</u> <u>United States v. Rosa</u>, 11 F.3d 315, 334 (2d Cir. 1993). Completing the story of the crimes is another a legitimate use of prior act evidence. <u>United States v. Williams</u>, 585 F.3d 703, 707 (2d Cir.

10

2009) (citing <u>United States v. Reifler</u>, 446 F.3d 65, 91-92 (2d Cir. 2006)).  Evidence

of other similar crimes is also admissible under Rule 404(b) "to prove the identity of

the defendant as the person who committed the offense being prosecuted, and the

decision whether to admit or exclude such evidence is committed to the discretion of

the trial court."  <u>United States v. Campbell</u>, 300 F.3d 202, 215 (2d Cir. 2002).

Once the Government has proffered a proper purpose for "other act" evidence,

the Court must then determine whether the other act is in fact probative of the

crimes charged.  In this regard, the Government must identify the similarity or

connection between the act at issue and an element of the crime charged.

<u>McCallum</u>, 584 F.3d at 475; <u>United States v. Brand</u>, 467 F.3d 179, 197 (2d Cir.

2006); <u>United States v. Pitre</u>, 960 F.2d 1112, 1119 (2d Cir. 1992).  If the

Government cannot identify some similarity or connection between the other acts

and charged conduct, then evidence of such other acts cannot be probative of

knowledge and intent.  <u>Garcia</u>, 291 F.3d at 137-38; <u>United States v. Tubol</u>, 191 F.3d

88, 96 (2d Cir. 1999) (finding that admission of prior act was error where

Government failed to show any similarity between a hoax bomb and an Israeli

bomb).

The similarity or connection between the charged crime and the prior event

goes to the question of relevance.  To be relevant, the other act must be sufficiently

similar to the conduct at issue to permit the jury reasonably to draw an inference

from the act that the state of mind of the actor is as the proponent of the evidence

asserts.  <u>United States v. Curley</u>, 639 F.3d 50, 57 (2d Cir. 2011).  The court abuses

11

its discretion if the "chain of inferences" necessary to connect the other act evidence with the charged crime is "unduly long." Id.; see also United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987).

## IV.     RULES REGARDING EXPERT TESTIMONY

Rule 16 of the Federal Rules of Criminal Procedure set forth procedures relating to the disclosure of proposed expert witnesses. Fed. R. Crim. P. 16. Rule 16(b) provides for disclosure by the defendant of potential expert testimony if certain conditions are met. None of those conditions are applicable here.[5] More generally, the Court has the ability to regulate pre-trial disclosures and to make any orders necessary in the interests of justice. Fed. R. Crim. P. 16(d).

Courts have precluded expert testimony disclosed too close to trial to allow a party properly to prepare, or when disclosures made are inadequate. See, e.g., United States v. Perry, 524 F.3d 1361, 1370-72 (D.C. Cir. 2008); United States v. Mahaffy, No. 05 Cr. 613 (S-3) (ILG), 2007 WL 1213738, at *2-3 (E.D.N.Y. Apr. 24, 2007). Separately, various rules provide a court with the inherent power to regulate the presentation and order of evidence admitted at trial. See, e.g., Fed. R. Evid. 401, 402, 403. Evidence which would invade the province of the jury as factfinder is properly precluded. See United States v. Duncan, 42 F.3d 97, 101-02 (2d Cir. 1994).

---

[5] The conditions relate to the defense requesting disclosure from then Government of certain information under Rule 16(a)(1)(G), or if the defendant has placed his own mental condition at issue pursuant to Rule 12.2.

12

V.    DISCUSSION

a.  The Sexual Assault[6]

The defendant argues that the sexual assault of JA should be precluded on the bases that (1) since the victim was blindfolded during the incident, she will not be able directly to implicate him in the attack; (2) it will not be used to prove any of the elements of the offense and is therefore irrelevant under Rule 401; and (3) any probative value is substantially outweighed by its prejudicial effect.  The Court disagrees with these arguments.

The defendant is charged with, inter alia, conspiracies to rob and kidnap, as well as the substantive offenses for the same.  Both of those offenses include threatened or actual use of force or violence as an element of the offense.  The substantive robbery charge requires proof of an "unlawful taking or obtaining personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury."  18 U.S.C. §1951.  The definition of "kidnap" is to "take away (someone) by force usually in order to keep the person as a prisoner and demand money for returning the person."  Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/kidnap (last visited September 4, 2014).

There can be no serious doubt that the use of force with the first of two kidnapping victims is relevant to these conspiracies and substantive crimes.  The defendant argues that at the time of the sexual assault, JA had already been bound

---

[6] As do both the defendant and Government, the Court relies on facts developed during the Fatico hearing held on January 15, 2014 for facts regarding the sexual assault.

13

and gagged and was therefore already restrained. Put otherwise, that proof of additional force is unnecessary and irrelevant to the initial act of kidnapping.

This argument ignores several points. First, it assumes that the act of kidnapping requires only a single and initial restraint as opposed to ongoing actions to continue to subdue and restrain a victim. There is no necessary reason why this is so. The kidnapping occurred over a period of time and how it was effected is therefore relevant. Second, defendant's argument ignores that the robbery crimes require fear of injury or violence by means of actual or threatened use of force, 18 U.S.C. § 1951(a), and ignores the fact that the robbery had not been completed at the time of the assault – it was still in progress. Thus, the use of violence continued to play a role.

In addition, these arguments ignore the impact that violent acts and subduing JA had or may have had on the Male Victim. When the Male Victim entered the apartment and was himself kidnapped and robbed, the condition of JA was such that he testified at the Fatico hearing that he thought she was dead and that her condition placed him in fear of his own life. The condition of JA at the time was her condition following the sexual assault and urination incident. The use of force against JA is therefore relevant to the effect it had on the Male Victim. Notably, the statute pursuant to which the defendant was charged anticipates that fear of injury includes injury to the victim or a member of his family or someone in his company. 18 U.S.C. § 1951(b).

14

Accordingly, the sexual assault and urination incident is relevant and direct evidence of the crimes charged.

The Court turns to Rule 403 to determine whether the balancing test required by that rule requires preclusion. It does not. It is certainly true that the facts relating to the sexual assault are brutal. But those are the facts alleged to have occurred during the course of the crime, they are not collateral. The defendant is charged with crimes which involve acts of restraint and/or use or threatened use of violence or force. How he and his coconspirators are alleged to have conducted themselves is therefore directly relevant. The Court cannot alter the fact that the level of violence used was more than the defendant now argues was necessary to complete the crimes. The acts which were done were done and the jury is, in this context, entitled to consider the evidence. This is not a case in which a jury, considering the evidence, may be lured into declaring guilt on some ground other than proof specific to the crime charged. See Old Chief v. United States, 519 U.S. 172, 180 (1997).

The evidence is highly probative of the crimes charged. The Court does not find that the prejudicial impact substantially outweighs that probative value. Evidence of the sexual assault and urination incident is therefore admissible.

    b.  The Male Victim's Prior Acts

The defendant argues that inquiry is proper and should be allowed into the areas of the Male Victim's past which the Government seeks to preclude. In particular, he argues that preclusion of these acts will "hide the true nature of [the

15

Male Victim's] character from the jury" and that the jury will have only a "sanitized version" of the Male Victim. (Letter Response, ECF No. 153, at 2.) In particular, it is the "collection" of prior acts which the defendant argues compel their admission – not the isolated acts taken one by one.

As an initial matter, it is unclear if certain acts were arrests only and would therefore be precluded on that basis. See United States v. Khalil, No. 05 Cr. 573, 2005 WL 3117195, at *2 (2d Cir. Nov. 22, 2005) (summ. order) (affirming the district court's preclusion of examination of a witness about a prior arrest because it was not probative of truthfulness under Rule 403); United States v. Salameh, 152 F.3d 88, 131-32 (2d Cir. 1998) (same). The Court's discussion below relates only to those acts which the Male Victim concedes occurred or are convictions.

The Court does not agree with the defendant's argument as cast. Acts – even a collection of acts – dating back more than a decade is not in and of itself suggestive of any greater problem with credibility than the acts into which the defendant will have free reign to examine. However, in light of the defendant's argument that it is the collection of past acts that creates the issue, the Court requested a proffer from the Government as to whether the Male Victim may potentially be seeking to obtain assistance from the immigration authorities to adjust his status as a result of his assistance in this case. At a pretrial conference on September 4, 2014, the Government represented that the Male Victim and the Government had spoken about the Government potentially providing a Certificate of Helpfulness, which might aid the Male Victim with an application for a U visa.

16

As the Court stated during that conference, any immigration assistance may render the collection of convictions relevant to the question of possible bias – that is, how big a hole the male victim needs to dig himself out of with his assistance to the U.S. Government (arguably) in order to obtain the immigration assistance he would like.  In such a situation, a history of crimes going back in time has a different sort of relevance – it goes not to a natural propensity to tell the truth (or not) but rather towards possible bias.  As set forth in the conference, the prior acts are admissible for that limited purpose.  Presentation of those convictions should be limited in scope and time to fit that restricted purpose of demonstrating potential bias.

The defendant argues that the Male Victim's acts of domestic violence should be separately admissible because they go to a possible motive by JA to set up the Male Victim for the robbery – and that the robbery "went wrong" and she was kidnapped and brutalized.  Defendant does not appear to be arguing that the brutalization of JA, including the sexual assault, did not occur.  Instead, the defendant appears to instead agree that if JA set up the Male Victim, things did not go as planned.  In light of this, it is unclear how any involvement by JA in setting up the robbery would ultimately be relevant to any defense.  It is not, for instance, as if the defendant will argue the events never occurred.  To the extent the defendant seeks to attack JA's credibility by suggesting she is lying by denying involvement, that is too tenuous to support admission.  Accordingly, unless and until the defendant makes a further proffer on relevance, inquiry into these acts on this basis are precluded.

c.  <u>The Defendant's Prior Acts</u>

The Government argues that it may seek to introduce, through the CW, prior robberies in which the defendant was a participant (so-called Acts 1-4).[7]  In particular, the Government argues that the CW would testify that the defendant was asked to participate in the robbery charged because of his prior experience.  In this regard, statements suggesting prior robbery experience are admissible under Rule 404(b) and relevant case law for the proper purposes of showing the relationship of trust between the defendant and his coconspirators, <u>see</u> <u>United States v. Araujo</u>, 79 F.3d 7, 8 (2d Cir.), <u>cert. denied</u>, 519 U.S. 888 (1996)), completing the story of the crimes charged, and showing plan and preparation.

In addition, the Government seeks to introduce a statement in which the defendant told the CW that the kidnapping and robbery were not his typical style because of the amount of time spent at the location, and that he preferred quick in and out jobs.  This statement was followed by a period of time in which the CW and the defendant exited the apartment.  According to the Government, this evidence is necessary to rebut the defendant's alibi defense – in other words, that some absence from the scene was consistent with this statement and modus operandi.  The statement is similarly offered for a proper purpose:  again to reveal the trust and confidence between the coconspirators as well as to explain his typical modus operandi (and thereby address his desire to, and act of, leaving the apartment).

---

[7] The defendant argues that he is not alleged to have been involved in the robberies to which Acts 1-3 refer.  If this is the case, the Court needs an additional proffer from the Government on those.

Nor are these statements precluded by Rule 403.  The statements are highly probative as to how the defendant came to be included in the robbery and kidnapping crew and highly probative of the facts surrounding his presence or absence from the apartment at various points in time.  While prejudicial, the evidence regarding past robbery involvement is no more sensational than the crimes with which the defendant is here charged.

Separately, the Government has moved to inquiry into certain prior convictions including a 2011 conviction for burglary (Act 10), a 2008 conviction for Uttering a Forged Instrument, grand theft, and Use of Personal Fraudulent Identification (Act 8).  The Court precludes admissibility of the 2011 conviction as offered for no proper purpose,[8] but will allow inquiry into the 2008 conviction.  The elements of Uttering a Forged Instrument and Use of Personal Fraudulent Identification contain elements requiring proof or admission of dishonest acts or false statements.  See Fed. R. Evid. 609(a)(2).

### d.  The CW's Prior Act

The defendant has not addressed the prior sexual encounter that the CW had with a woman who pulled a knife on him.  The Court assumes that the defendant has no intention, therefore, into inquiring into this incident.  In any event, it is irrelevant to any issue of credibility, it was not charged as a crime, and would confuse the jury, waste time, and be a distraction from the issues on trial.  Thus, inquiry into this incident is precluded under Rules 402 and 403.

---

[8] The Government has alleged only that the 2011 Act was a burglary and then discussed Rule 403. This is insufficient.  To be admissible, the prior act must share some similarity to be offered (for instance) for proof of modus operandi, or knowledge, etc.

e.  The Proposed Expert

Defendant has proffered that he intends to call Dr. Rosenbaum as an expert in forensic psychiatry simply to provide definitions of certain medical terms the jury will hear.  To the extent that medical terminology is offered during trial, Dr. Rosenbaum is an appropriate expert to explain the meaning of that terminology to a jury of laypersons.  There is an obvious value to the jury having an understanding of the definitions of certain terms not within the typical vocabulary of a layperson. Far from misleading the jury, the limited testimony would elucidate.  Moreover, the Government's contention that Dr. Rosenbaum would offer opinions that inappropriately tread upon the role of the jury has been addressed by the defendant's representation that Dr. Rosenbaum will not be offering an opinion regarding the CW's credibility.

f.  Statement from MCC Inmate

The Government also seeks to admit a statement by an inmate at the MCC to the CW that the defendant had asked the inmate to convey the message to the CW that he did not want the CW to testify.  This statement is probative of the defendant's consciousness of guilt.  See United States v. Roldan-Zapata, 916 F.2d 795, 803-04 (2d Cir. 1990).  The statement is, however, made by one declarant (the inmate of the MCC), conveying a message by another declarant (the defendant). The Court therefore evaluates whether it constitutes double hearsay.

As an initial matter, based on the characterization of the statement in the Government's papers, it appears that the Government intends to offer it for the fact

20

that it was said – not for its truth.  That is, the Government seeks to introduce the fact that the defendant made such a statement and the MCC inmate, in turn, made such a statement – not the truth as to whether the defendant was in fact concerned about the defendant testifying.  If the statement is not offered for the truth, it would not be hearsay and whether it was transmitted from one person to two or more is irrelevant.

Analyzed for the truth, however, it is nonetheless admissible.  Under Rule 803(3), it is a statement of the defendant's state of mind.  Separately, it is a coconspirator statement made by the defendant through a conduit, to a former of coconspirator (the defendant) in furtherance of the conspiracy.  Statements made to hide the existence or activities of a conspiracy are made in furtherance of it.  United States v. Eisen, 974 F.2d 246, 269 n.8 (2d Cir. 1992).  Cast in another way, the statement can be viewed as one by the defendant in a conspiracy with the declarant (the MCC inmate) to cover up evidence of the crimes of the other conspiracy with which the defendant is charged and in which the CW participated.  See United States v. Vargo, 185 F. App'x 111, 115 (2d Cir. 2006).

VI.    CONCLUSION

For the reasons set forth above, the defendant's motion in limine is DENIED

and the Government's motion in limine is GRANTED in part and DENIED with

respect to the defendant's proposed expert witness.  The Clerk of Court is directed

to terminate the motions at ECF Nos. 138, 139, 142, and 180.


SO ORDERED.

Dated:      New York, New York
            September 9, 2014

                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge