E941delc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          12-CR-802 (KBF)

DAVID DELVA,

             Defendant.            Final Pretrial
                                      Conference

------------------------------x

                                 New York, N.Y.
                                 September 4, 2014
                                 10:10 a.m.

Before:

                    HON. KATHERINE B. FORREST,

                                    District Judge

                          APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
BY:  RYAN P. POSCABLO, ESQ.
    JUSTINA L. GERACI, ESQ.
    Assistant United States Attorneys
    ANNIE CHEN, Paralegal Specialist

JEFFREY G. PITTELL, ESQ.
    Attorney for Defendant

ALSO PRESENT:  JOHN REYNOLDS, Special Agent, FBI

E941delc

```
 1              (In open court; case called)
 2              THE CLERK:  Counsel, please state your names for the
 3    record.
 4              MR. POSCABLO:  Good morning, your Honor.  Ryan
 5    Poscablo and Justina Geraci on behalf of the government.  With
 6    us is paralegal specialist Annie Chen and Special Agent John
 7    Reynolds of the Federal Bureau of Investigations.
 8              THE COURT:  All right.  Good morning, all of you.
 9              MS. GERACI:  Good morning, Judge.
10              MR. PITTELL:  Good morning.  Jeffrey Pittell for
11    Mr. Delva.
12              THE COURT:  And good morning, Mr. Pittell.  And the
13    court notes that Mr. Delva is here present in court this
14    morning.  Good morning, Mr. Delva.
15              THE DEFENDANT:  Good morning.
16              THE COURT:  All right.  We're here for a final
17    pretrial conference.  We've got the trial starting on
18    September 8, which is Monday.
19              I've got several items on the agenda.  The motions *in*
20    *limine*, just to sort of resolve them.  I've reviewed the
21    government's response to them.  I want to check in on trial
22    duration.  We'll be talking about also the DNA evidence in
23    terms of what the presentation is expected to look like in that
24    regard, how many witnesses, whether it's going to expand the
25    duration of the trial, if so, by how much, etc.  So those are
```

E941delc

1    sort of my matters.  Do you folks have additional matters we

2    should put onto the agenda so I can be sure we have a complete

3    list before we begin?

4            MR. POSCABLO:  Prior to the conference today, your

5    Honor, the government did prepare sort of a checklist of the

6    items that we think are outstanding.

7            THE COURT:  All right.

8            MR. POSCABLO:  And I think if your Honor goes through

9    your checklist, I think it will match ours, so --

10           THE COURT:  All right.  So you'll raise whatever I

11   don't cover with me before the end so we make sure we've got

12   everything taken care of.

13           MR. POSCABLO:  Yes, your Honor.

14           THE COURT:  All right.  Terrific.  Let me ask for you

15   folks, both for the government and for the defense, to tell me

16   about the DNA evidence.  Where do we stand with that?  What's

17   the presentation going to look like?  Are there any outstanding

18   loose ends we need to go over?  And let me just sort of say, as

19   a preliminary matter, as we all know, we had adjourned the

20   trial in July in order to give the defendant an opportunity to

21   respond to the DNA evidence and I did get a subsequent request

22   in August for an adjournment, which I denied on the basis that

23   there was sufficient time in what we had already previously

24   arranged to allow the parties to respond to the DNA evidence

25   and could confer as appropriate.  And so if there is something

E941delc

1    that anybody wants to raise as to an issue in that regard, I'm

2    not particularly interested in hearing a request for an

3    adjournment, but if there was something that really was not

4    able to be done that would have been done with one or two more

5    days, I just would like to hear about it.

6              MR. POSCABLO:  Not from the government, your Honor.

7              THE COURT:  All right.  Mr. Pittell?

8              MR. PITTELL:  No, none from us.

9              THE COURT:  All right.  So then I'm going to assume,

10   unless somebody wants to tell me otherwise, that the parties

11   have had an appropriate opportunity then to adjust their trial

12   strategy to the DNA evidence.

13             MR. POSCABLO:  We have, your Honor.

14             MR. PITTELL:  That's correct.

15             THE COURT:  All right.  Now, Mr. Poscablo -- oh,

16   Mr. Delva, is there something you wanted to say?  Maybe you

17   should talk to your lawyer.  Mr. Pittell?

18             (Defendant and his counsel conferring)

19             THE COURT:  All right.  If there's another issue you

20   folks want to raise before we get to the end of today's

21   session, let's make sure that we raise it.

22             MR. PITTELL:  Yes, I told Mr. Delva we'll bring it up

23   at the end.

24             THE COURT:  All right.  Terrific.  We'll go through my

25   list and then we'll get to the respective lists that you folks

E941delc

1    may have.

2              Mr. Poscablo or Ms. Geraci, how long is the

3    government's presentation on the DNA expected to last?  Does it

4    involve any new witnesses?

5              MR. POSCABLO:  No, your Honor.  I think the government

6    expects to call criminalist Diana Cooke, who we expect to

7    testify approximately about an hour, hour and a half.  I think

8    the additional DNA evidence in this case doesn't lengthen her

9    testimony any more than five, ten minutes at most.

10             I would alert the court that, given the defendant's

11   notice of an expert, a DNA expert, we may call a rebuttal

12   witness, at the end of the defense case, if there is a defense

13   case, which shouldn't take any more than an hour of direct;

14   certainly less, I think.

15             THE COURT:  All right.  So from your perspective,

16   Mr. Poscablo, it's not expected that the DNA evidence will

17   materially lengthen the trial.

18             MR. POSCABLO:  No, your Honor.  And as the court

19   knows, and I just learned about a week ago, there was already

20   DNA evidence in the case and, you know, so Ms. Cooke's

21   testimony was already going to take a certain amount of time.

22             THE COURT:  Right.  And I do know that Ms. Cooke was

23   number 9 on the previously submitted witness list.  The

24   numbering is my handwritten numbering.  She appears ninth on

25   the list.  There wasn't numbering on the list, but she was

E941delc

```
 1   ninth on the list before.  All right.
 2               MR. POSCABLO:  Thank you.
 3               THE COURT:  Mr. Pittell, from your perspective, in
 4   terms of responding to the new evidence, is there going to be
 5   any new witnesses called, at least in terms of a potential
 6   expectation at this point?
 7               MR. PITTELL:  Yes.  I've noticed the government that I
 8   plan on calling a rebuttal expert.  I don't expect the delay to
 9   be that significant, probably somewhere along the lines of the
10   government's direct, an hour, hour and a half.
11               THE COURT:  All right.  What's the name of that
12   individual?
13               MR. PITTELL:  Suzanna Ryan.  What I'll do -- I only
14   sent the notice to the government.  I didn't file it on ECF.
15   I'll file it.  Her name is also going to be on the revised
16   witness list that the court is going to get.
17               THE COURT:  Was it O'Ryan or Ryan?
18               MR. PITTELL:  No, Suzanna Ryan.
19               THE COURT:  Oh, Suzanna Ryan.  All right.  And is she
20   a PhD, MD, any kind of title that I need to know?
21               MR. PITTELL:  No, no doctor title.
22               THE COURT:  All right.  Terrific.  And so that won't
23   be a material lengthening but it will be some addition.
24               MR. PITTELL:  Yes.
25               THE COURT:  All right.  Terrific.
```

E941delc

1              Okay.  In terms of other issues, I wanted to deal with

2      two other issues relating to the motions *in limine*.  One

3      relates to Dr. Rosenbaum.  The issue with Dr. Rosenbaum, which

4      we had dealt with in the prior motion *in limine* discussion that

5      we had in July, relates to whether or not, number one, she's an

6      appropriate witness to testify as an expert, and, two, the

7      nature of her testimony.  During our last discussion in July,

8      we had asked Mr. Pittell for a proffer, and we did get a

9      proffer, that she would be limited in her testimony to

10     definitions to assist the jury in understanding certain words

11     and terms that were being used.

12              I've received and read the government's response to

13     that proffer, and that was in a letter that's dated I believe

14     today's date, and the government takes the position that

15     Dr. Rosenbaum would not be appropriate.  I disagree with that.

16     Under Federal Rule of Evidence 702, an expert witness may

17     testify as to an opinion or otherwise, and that is in the

18     language of the rule.  It's not required that Dr. Rosenbaum or

19     any expert who is otherwise qualified actually have a, quote,

20     opinion.  In addition, an expert witness must meet three

21     categories under the Federal Rules of Evidence, and

22     Dr. Rosenbaum's medical training would give her the scientific

23     expertise.  The fact that she appears to be using standard

24     medical terminology and not doing anything different or

25     applying some other alternative definition would also result in

E941delc

1    her methodology being reliable, and there's no real reason to

2    have to inquire into it.

3          So putting aside any issues relating to the

4    authenticity or the admissibility of the medical records

5    themselves -- that's a separate issue -- to the extent that

6    there is terminology offered in these proceedings relating to

7    Mr. Accilien's prior medical history, I will allow that.

8          Now the government also raised Rule 608.  Rule 608

9    relates to testimony going to truthfulness or untruthfulness,

10   and there are cases that the government cites where the other

11   courts in the past have certainly disallowed certain

12   psychiatric testimony that purports to opine on the witness'

13   propensity for truthfulness.  That, as I understand from

14   Mr. Pittell's prior proffer, is not the intent for

15   Dr. Rosenbaum.  Dr. Rosenbaum is going to give definitions, for

16   instance, as to something along the lines of paranoid

17   schizophrenia and what that means in terms of a definition, and

18   she may be able to do that in a manner that's more

19   comprehensible than DSM-IV, which is the medical dictionary

20   which Mr. Pittell had attached to his letter in July.  I think

21   it was helpful for Mr. Pittell to have done that because a

22   quick review of that dictionary definition only reinforces the

23   need for Dr. Rosenbaum to perhaps assist the jury with

24   translating that into layperson's terms.

25         Now the government understandably may want to

9

E941delc

1    cross-examine Dr. Rosenbaum on the fact that she has no

2    particular independent basis for knowing whether or not

3    Mr. Accilien has or has not been appropriately diagnosed with

4    these.  She's only going to be a witness for the terms, the

5    definitions, not with respect to whether or not Mr. Accilien

6    has a psychiatric condition which would prevent him or change

7    the nature of his credibility.  So I think that given the

8    parameters of what Mr. Pittell has offered in terms of

9    Dr. Rosenbaum and in terms of the expected testimony, I will

10   allow her.

11        Now that's separate, Mr. Pittell, from how you're

12   planning on getting any medical records in.  Presumably you

13   folks will have dealt with that either through a stipulation or

14   custodian of records or calling a treating physician or just

15   asking Mr. Accilien himself if he recalls if he's been

16   diagnosed with X, Y, or Z.  But that will be up to you to

17   separately go into.  I don't have a motion before me on that at

18   this point.

19        All right.  Is there anything anybody wants to raise

20   on Dr. Rosenbaum?

21        MR. POSCABLO:  Judge, just so the record's clear, the

22   government's also arguing that Rosenbaum's testimony at this

23   point isn't necessarily relevant, and what I mean by that is,

24   if Dr. Rosenbaum is going to testify about terms that

25   presumably come in, psychologic and psychiatric terms that are

E941delc

1    attached to Mr. Accilien, if those terms don't come out,

2    meaning the medical records don't come in or Mr. Accilien

3    doesn't know what he's diagnosed with, then I think the

4    government deserves the right to object to Dr. Rosenbaum's

5    testimony on relevance grounds.

6            THE COURT:  If it turns out that Dr. Rosenbaum gets on

7    the stand and is using terms coming out of the blue and she's

8    the only person in the entire proceeding at that point who's

9    talking about paranoid schizophrenia, that's a different

10   situation.  I'm assuming that since this witness we all know

11   has a significant and serious history of psychiatric issues,

12   which arguably could go to the jury's view as to his

13   credibility, that Dr. Rosenbaum may have a role.  Sufficient

14   unto the day.  If she doesn't, she doesn't, but I'm assuming

15   she could be helpful to the jury in explaining terms that they

16   may have heard, or if it's going to be the case that

17   Mr. Pittell makes a proffer that seems to have evidentiary

18   foundation that these terms are going to come in and he wants

19   to precede the introduction of those terms with the doctor,

20   then we would talk about that order, and I wouldn't necessarily

21   require Dr. Rosenbaum to follow but I would want a proffer that

22   the evidence is going to come in.

23            MR. POSCABLO:  Right.  Thank you, your Honor.

24            THE COURT:  Mr. Pittell, does that all make sense?

25            MR. PITTELL:  Yeah.  I mean, it's going to come in

E941delc

1    that he's been diagnosed.  If it doesn't come in, if he denies

2    it, he's going to get impeached by the records, where in the

3    records he self-diagnoses, as well as he's been diagnosed by

4    the doctor.  So it's going to come out.  If he denies it, the

5    records are going to go in, or be used to impeach him, and then

6    Dr. Rosenbaum will be explaining.  If he admits it,

7    Dr. Rosenbaum will be useful.

8          THE COURT:  I think the evidentiary point, just so

9    that we're all on the same page for when that moment comes,

10   because we may want to deal with it that morning in particular

11   or deal with it at any point in advance to give us all more

12   time to respond, is, there may be a difference between what he

13   states he understands he was diagnosed with and the words and

14   terminology he may use, which may or may not follow a technical

15   definition, in the records.  The records themselves, for

16   impeachment purposes, would simply be if he's even seen them,

17   right, and has any basis to sort of look at them.  But they're

18   going to be hearsay.  So you're not going to be able to put the

19   records, just standing alone, up on the screen to have some

20   third-party doctor's handwritten statement based upon who knows

21   what kind of examination with terms.  So I just say that so

22   that we're all on the same page about how this could play out.

23   I mean, if Mr. Accilien gets up there, I fully expect he will

24   say, as he did during his plea, he's been diagnosed with

25   whatever he's been diagnosed with, and I've forgotten what the

E941delc

1    words are.  And the medications are what the medications are.

2    That may be enough to provide the basis for Dr. Rosenbaum or

3    not.  But we'll just take it one step at a time.

4              MR. PITTELL:  I think we're all on notice.

5              THE COURT:  All right.  Terrific.

6              Now the second issue was the male victim's prior

7    convictions.  And as I had said during the prior conference in

8    July, there's a difference between prior convictions and prior

9    arrests.  We're going to put to the side and assume, unless

10   someone tells me otherwise, that the arrests, under

11   longstanding caselaw, are not something as to which he's going

12   to be cross-examined.  Mr. Pittell, am I right about that?

13             MR. PITTELL:  Yes.

14             THE COURT:  All right.  So we're talking about the

15   convictions.  Now as I had raised during the prior conference

16   and as the government has responded to, and had been raised by

17   Mr. Pittell in terms of the aggregation of convictions issue,

18   the question is whether or not there's a way in which this

19   relates to bias.  It is my view, having reviewed the

20   government's letter on this, that it does still go to bias, and

21   I will allow a limited amount in on these prior convictions.

22   These are the convictions which predate the illegal entry of

23   the male victim.  As I understand it, the government had no

24   objection to the moment of illegal reentry and the conditions

25   and circumstances of that reentry to the present, including the

E941delc

1    witness saying:  I'm a drug dealer.  I'm testifying under

2    immunity.  The reason why I am going to allow certain limited

3    testimony on prior convictions which predate that deportation

4    is because, while I do understand that there are no promises as

5    to a certification of helpfulness for immigration purposes, it

6    does appear that there are conversations which have occurred.

7    Unless somebody wants to proffer that the male witness has no

8    intention of ever applying for a certification of helpfulness,

9    then I think the jury's entitled to know that there may be a

10   hole that this guy has dug for himself by being not just a drug

11   dealer but a significant drug dealer.  He'd been accused, I

12   believe, of a CCE in the past, a continuing criminal

13   enterprise.  So therefore, while under the standards set forth

14   in the government's footnote for obtaining a certification of

15   helpfulness, conviction of prior crimes is not a criterion,

16   that is separate and apart from whether or not, in the totality

17   of circumstances, an individual's prior circumstances of

18   conviction would be relevant to an immigration authority.  It

19   clearly is generally taken into account by immigration

20   authorities whether or not an individual has prior felony

21   convictions.  Therefore, the court's going to assume he's going

22   to get a certification of helpfulness and that that may do more

23   for him in the context of his prior past and that therefore he

24   wants it even more.  So it can go to bias, right?  Because

25   otherwise, I think his bias may not be fully formed.

E941delc

1          With that said, I want these prior convictions to be

2     very short and not to be a trial within a trial.  It should

3     simply be prior conviction, what it was for, sentence imposed.

4     It's two minutes, not twenty minutes, per conviction.  So it's

5     really just very short.  It's not:  Weren't you on the street

6     with John Doe doing X, Y and Z, weren't there 27 people

7     involved in the whatever it was?  It's really:  Weren't you

8     arrested for this, weren't you then convicted either through a

9     plea or otherwise, and weren't you then deported?  And it sort

10    of gives also the history of the deportation.  Now that does

11    not in any way implicate the hitting the guy over the head with

12    the baseball bat, which I don't think was the subject of a

13    conviction.  It was the subject of an arrest.  It doesn't

14    implicate the domestic violence incident relating to JA.  I'm

15    really talking about the prior drug convictions prior to his

16    deportation.  If there's something else which I'm missing, then

17    let me know.  But that's what I'm referring to, short and

18    sweet.

19          Does anybody want to respond to the court's rationale

20    or seek further definition as to what it encapsulates?  Do we

21    all understand what we're going after?

22          MR. POSCABLO:  Yes, your Honor.  And I think what

23    we'll do is I'll speak with Mr. Pittell after the conference

24    today to figure out which convictions he intends to go into,

25    and if we can agree, then we'll agree about that.

E941delc

1          THE COURT:  All right.  Terrific.  Terrific.  If

2    there's any issues at all, let me know.  I went through what

3    had been raised in the motion *in limine* and I believe they were

4    just prior drug convictions.  There were other arrests, and

5    that's what we've put to the side.

6          MR. POSCABLO:  Thank you, your Honor.

7          THE COURT:  Mr. Pittell, do you understand what the

8    court's direction is in this regard?

9          MR. PITTELL:  Yes, I do.

10          THE COURT:  All right.  That, combined with the

11    court's prior draft opinion on the motions *in limine*, resolves

12    the outstanding motions *in limine*.  I'm going to revise the

13    opinion to reflect these rulings and then put that out so we've

14    got that.

15          All right.  Those are the matters which I had.  Other

16    than that, we had dealt with some of the other matters before,

17    in terms of jury instructions, how the jury would be selected,

18    etc., etc.  I don't think there's actually any reason to start

19    before 9:30 on Monday, not 9.  The reason for that is there are

20    a number of criminal trials Monday for which there is going to

21    be jury selection going on.  I don't know what time we're going

22    to get our pool as a result.  I hope we're one of the early

23    ones because my method sends jurors back on an ongoing basis

24    and so I'm hopeful that will give them an incentive to give us

25    an early group, but I don't know.  I think there are eight jury

E941delc

1    trials.  So just be aware.  I don't know if we'll get a morning

2    group or an afternoon group.  But we'll figure that out.  So

3    let's start at 9:30 on Monday.

4              What else do you folks have?  Mr. Poscablo, you had a

5    list and Mr. Pittell had a list?

6              MR. POSCABLO:  We do, your Honor.  Ms. Geraci prepared

7    a thorough list.

8              Your Honor, we had an updated witness list.  I think

9    we filed it on ECF.  If we haven't, we'll do so after the

10   conference.  What we're doing is trying to streamline the case,

11   and I think we took one witness off of that list.

12             THE COURT:  All right.

13             MR. POSCABLO:  The voir dire has already been filed,

14   your Honor.

15             I did have a question regarding the requests to

16   charge.  I think all of them have been filed, meaning the

17   government has filed theirs and Mr. Pittell has filed his,

18   first, second, supplemental sort of objections or questions.

19   What is your Honor's practice?  Does your Honor intend to have

20   a charge conference?  Someone had mentioned to me that we might

21   be discussing the charge in the mornings or at breaks in order

22   to expedite the process.

23             THE COURT:  Yes, that's what we'll do.  If the

24   question is, are we going to have a separate sort of half a day

25   for the charging conference, the answer is no.  You tried the

E941delc

1    *Rosario* case, which was a jury trial, so it's similar.

2              MR. POSCABLO:  No, that was --

3              THE COURT:  That was a bench?

4              MR. POSCABLO:  That was a bench trial.

5              THE COURT:  Oh, that was?  Okay.  All right.  That's

6    right.  That was unusual that way.

7              MR. POSCABLO:  That was.

8              THE COURT:  So we didn't have jury instructions.  But

9    my practice is, I'll give you a set of the jury instructions

10   probably on Tuesday or Wednesday, you'll then have 24 hours or

11   so, if you can, or we'll see how the trial is going and how

12   timing is going and where we are and how much time we think we

13   have, and we'll adjust ourselves.  It's best for me and you if

14   you can do redline changes with your comments in Word, you

15   know, to track changes, but if you can't, we'll go through them

16   one by one each morning thereafter as time permits.  We'll take

17   housekeeping for that day first, do some charges after that

18   during breaks, and we typically get through it.

19             MR. POSCABLO:  Okay.

20             THE COURT:  All right?  Let me just raise one thing,

21   which may or may not come up.  It depends on how the trial

22   proceeds.  But if the trial looks like it's proceeding in a

23   manner where we're going to have a chunk of an afternoon after

24   the parties have rested, after the defense has rested, after

25   everybody's done, and you folks would prefer to start the next

E941delc

1   morning for closings, what I've done in the past is start to

2   charge the jury or charge the jury entirely before the

3   summations, to use that time.  It allows you then to have a

4   chunk of time to get ready for the summations but allows me not

5   to have to have the jury go home at midday if there's something

6   useful that we can do.  If the parties object to that, I can do

7   that with or without your objection, but if you objected to

8   that, then we can talk about whether or not I would stop, for

9   instance, after the preliminary charges, you know, the first 20

10  pages, where we'd go through circumstantial evidence, burden of

11  proof, and stop before I get to the elements of the causes of

12  action of the crimes charged or whether you don't care.  But

13  we'll talk about that.  It may or may not happen.

14          MR. PITTELL:  I actually prefer that you do that.

15          THE COURT:  You do.  All right.

16          MR. PITTELL:  Regardless of the timing.  I mean,

17  that's just my personal preference.  I don't know if the

18  government agrees or doesn't agree.

19          MR. POSCABLO:  We think it's a fine idea, your Honor.

20          THE COURT:  Well, it depends.  In this case there are

21  a number of charges and the charge itself may take awhile.  So

22  there's some benefit to splitting it up.  And I'm not saying

23  splitting it up before or after the summations but just having

24  the jury have a break of some kind, whether it be an overnight

25  or lunch break or 15-minute break, and then pick it up again.

E941delc

1    But we'll talk about that, and if there's no objection to it,

2    then it will give us more maneuvering room in terms of how we

3    proceed.

4              All right.  What else?

5              MR. POSCABLO:  There's an exhibit list that we filed,

6    your Honor.  I think we are in discussions with counsel with

7    regards to his objections regarding some of those.  We'll front

8    those issues with the court if there are any.  We already

9    submitted a verdict sheet.  There are stipulations between the

10   parties which are great.  Thank you to Mr. Pittell and his

11   client.  That will expedite the case.

12             With regards to the government's plan, we have

13   approximately 12 witnesses, and we had planned, given our

14   understanding of your Honor's sort of efficiency with regards

15   to jury selection, that we would open on Monday.  Assuming we

16   do open on Monday and call our first or second witness on

17   Monday, our anticipation is that we would be ready to rest late

18   Thursday afternoon or -- and your Honor's not sitting on

19   Friday -- or Monday.  So we'll be resting by Monday at the

20   latest, in our estimation.

21             THE COURT:  All right.  I think that actually

22   corresponds with what we thought in July.  And that means,

23   Mr. Pittell, you'd be picking up sometime likely on Monday.

24             MR. POSCABLO:  Just three other things, your Honor.

25   First, Special Agent Reynolds will be sitting at counsel table

E941delc

1      during trial.

2                  THE COURT:  Were you able to solve his issue?  I think

3      it was Judge Schofield?

4                  MR. POSCABLO:  Yes, your Honor.  That trial got

5      adjourned for directly after this trial.

6                  Oh.  He does have a hearing the first day so he may

7      have to step out, but generally speaking, he will be here.  We

8      also anticipate that Special Agent Reynolds will testify at the

9      end, sort of as the case agent in this case.

10                 Second thing is that Ms. Chen has an engagement during

11     the first day of trial, during jury selection, so another

12     paralegal specialist, Darcy Brady, will be sitting in for her.

13     So we ask that she be included on the list in the sort of

14     introduction to the jury or what have you.

15                 And then in addition to that, Special Agent Kim

16     Marcus, who is Special Agent Reynolds' partner, she's going to

17     be in the courtroom sort of helping funnel witnesses in.  I

18     don't know if it's your Honor's practice to also introduce her

19     so that the jury knows who the lady is in the back who's at

20     every day of trial.  If not --

21                 THE COURT:  You know, I don't have a practice in that

22     regard.  If you folks want her to be introduced, you can.

23     We'll do that in some casual way.  They'll figure it out.

24                 MR. POSCABLO:  Yes, they will.

25                 THE COURT:  Because they'll be intensely interested in

E941delc

1    everything that goes on here.

2              MR. POSCABLO:  That's true.

3              THE COURT:  So they'll know exactly who's who.

4              MR. POSCABLO:  Right.  And the final thing, your

5    Honor -- and I mentioned this to Mr. Pittell yesterday, on a

6    conversation over a call.  Because we know that the defense

7    intends to call witnesses, we asked him when he anticipated to

8    produce 3500.  The answer I got was that there was no 3500

9    material for any of his witnesses.  And we accept Mr. Pittell

10   at his word.  But there is one thing that I wanted to raise to

11   the court, and we'll try to work it out, but I wanted to front

12   it for the court.  Mr. Pittell did indicate that there were

13   e-mail exchanges between himself and his DNA expert, that a

14   report was not produced.  And I think it's our position that

15   any e-mail correspondence between Mr. Pittell and the DNA

16   expert regarding her testimony would fall under 3500 material.

17   I think his position is that it's work product, but I think if

18   she's providing an opinion to him in an e-mail and she's going

19   to testify about that opinion, I think it falls within the

20   rubric of 3500 material.

21             THE COURT:  Why don't you folks do this.  You may want

22   to find out whether or not the e-mails you're talking about

23   have any substantive content, and if so, write a short letter

24   stating your position, Mr. Pittell can respond in a short

25   letter, and then I'll rule.  But figure out whether or not

E941delc

1  there's any "there" there because if there is, that's one

2  thing.  If there's not, that's something else.  And I'm mindful

3  of Rule 16, but typically, the back-and-forth -- well, you

4  folks will brief how it relates to 3500.

5          MR. PITTELL:  We'll discuss this.  If we agree to

6  disagree, I would imagine submissions to the court would be

7  relatively brief.

8          MR. POSCABLO:  Yes.

9          THE COURT:  All right.

10          MR. POSCABLO:  And that's it from the government, your

11  Honor.  Have a good weekend.

12          THE COURT:  Okay.  And let me find out from you,

13  Mr. Pittell, what's on your list?

14          MR. PITTELL:  Your Honor, the only thing that hasn't

15  been covered that I think we should address is, on the prior

16  exhibit list which was submitted with my marked-up objections,

17  I think many of the objections the court could probably rule

18  from the bench, if the exhibit's going to go in.  However, the

19  issue regarding the letters may be something that we should

20  discuss now or before it goes in.  I had on my objection list

21  indicated I do not object to the envelope going in but I do

22  object to the actual letter.  Also, I mean, my objection at the

23  time was that the letters were hearsay, not subject to any

24  exception.  When I had written this, I think the *Riley* case

25  from the Supreme Court regarding searches of cellphones may

E941delc

1    have been decided, but other than hearing about it, I hadn't

2    read the case.  I don't know if the court's going to allow the

3    letters to go in, but if the court is contemplating allowing it

4    to go in, I think by analogy, the search of the cellphone is

5    arguably the same thing as opening up an envelope and searching

6    it without warrant.  So --

7            THE COURT:  Although the basis for the Supreme Court's

8    ruling in that regard had to do in particular with some of the

9    technology involved with cellphones and the breadth of

10   exploration of an individual's life that could occur.

11           MR. PITTELL:  I agree.  There are differences.  I just

12   would like to just bring that up if the court is inclined to be

13   allowing to let it in, perhaps raise brief supplemental

14   argument on that.

15           THE COURT:  Well, why don't you go ahead and put in a

16   brief supplemental argument on that.  We're having the

17   discussion for the first time so I'd like to think about the

18   evidentiary issue you've just raised, Mr. Pittell.  On the

19   substance, it struck me that there were two things in play.

20   One is, much of the content was nonhearsay, not for the truth;

21   it was just for the fact that it was said.  And to the extent

22   there was something which could be construed as potentially

23   inculpatory, that would be potentially an admission of a

24   co-conspirator in furtherance of the conspiracy in the sense of

25   attempting to procure continued cooperation and silence, so

E941delc

1    while there had been an arrest which had already occurred,

2    there's of course caselaw that a co-conspirator statement

3    trying to procure silence as to prior events can be in

4    furtherance of.  So that was the basis for the court's belief

5    that as an evidentiary matter on the content, the written

6    content, if you will, they would be allowable.  But I had not

7    thought about the searching aspect.

8         MR. PITTELL:  I mean, along those lines, my reading of

9    the letter is really one critical sentence.  I mean, maybe

10   there's some other ones, but there's the one in there, in one

11   of the letters, where he more or less says:  You guys are glad

12   that I'm not saying anything.  I'm just paraphrasing it.  You

13   know, I view that as not in furtherance, though, because he's

14   just saying:  Hey, you guys are lucky I'm keeping my mouth

15   shut, I'm not ratting you out.  That's not trying to procure

16   silence, that's not trying to, you know, get them not to,

17   because they've been arrested and not cooperating.  I mean,

18   first of all, it's sent to Mr. Accilien, not to Mr. Delva.

19        THE COURT:  No.  I viewed it as a co-conspirator

20   statement, however, so it would be attributable to.

21        MR. PITTELL:  It's a statement by a co-conspirator,

22   but in order for it to be admissible, it's got to be in

23   furtherance of the conspiracy and it cannot be idle chatter,

24   and I would argue that it's not in furtherance of the

25   conspiracy and that it's idle chatter.  I mean, we haven't

E941delc

```
 1   really gotten into it because I just simply wrote:  Objection,
 2   not subject to any hearsay exception.  I was going to kind of
 3   wait and see how the court was going to go and to see, if you
 4   were going to let it in, then we should make some supplemental
 5   argument.  But the point I'm making is, I view it as a complex
 6   issue that we should all give significant thought and
 7   discussion to.  I don't know if you want to do it now, if you
 8   want to do it on briefing, if you want to do it at some point
 9   during the trial.  I'm just raising it now.
10             THE COURT:  No, I think it's --
11             MR. PITTELL:  I see it as an issue.
12             THE COURT:  No, you were right to raise it.  Let's do
13   it on some additional briefing.  It can be in the form of a
14   formal letter.  You don't have to do a memorandum.  But let's
15   do it as letter submissions raising the issues so that
16   everybody can preserve their respective positions.  I would
17   like to think about that particular sentence and the manner in
18   which you have cast that particular sentence and see what the
19   government says in response to it.  Things which are open to
20   dual interpretations, one of which could be considered in
21   furtherance of and one of which might not be, we'd have to
22   think about which way that tips.  But let's put in papers on
23   that.  These are going to come in not on the first day?
24             MR. POSCABLO:  No, your Honor, not on the first day.
25             THE COURT:  All right.  So why don't we say --
```

E941delc

1          MR. PITTELL:  I was going to ask the government, what

2     date do you expect Accilien to testify?  Oh, actually wait,

3     they're going to come in through Agent Reynolds, who's going to

4     be the last -- I think he will cover them.

5          MR. POSCABLO:  It will be day two or three, your

6     Honor.

7          THE COURT:  I think Mr. Pittell, by virtue of having

8     raised the objection and he's expressed his view and some

9     additional thoughts on it, let's take that as an opening

10     volley.  Why doesn't the government put in what it can on --

11     today's Thursday and Monday's coming up.

12          MR. POSCABLO:  We can do it tomorrow.  We'll try to do

13     it tonight.

14          THE COURT:  Okay.  Terrific.  Mr. Pittell, if you can

15     do something by Monday morning, that would be terrific.  I'll

16     review it before I come out on the bench and then we'll talk

17     about it on Monday when we start.  It's going to take awhile to

18     get the jury anyways, as we've discussed.

19          MR. POSCABLO:  Ms. Geraci reminded me that in case

20     there are any other things on the exhibit list that we can't

21     resolve, we'll brief those as well.  I think they're minor,

22     but -- Thank you, your Honor.  And that's it from the

23     government, your Honor.

24          THE COURT:  All right.

25          MR. PITTELL:  That's it from us too.

E941delc

1          THE COURT:  All right.  So we've got ourselves a plan

2     of action.  We'll start Monday morning.  We'll start at 9:30.

3          Mr. Delva, did Mr. Pittell cover the matter that you

4     wanted?

5          MR. PITTELL:  No.  He has an issue.  I think it may be

6     better to address it *ex parte*.

7          THE COURT:  All right.

8          MR. PITTELL:  It's a legal issue.  I would prefer not

9     to bring it up in front of the government.

10          THE COURT:  I understand.  Why don't you --

11          MR. PITTELL:  If there's a necessity to bring the

12     government in, we can do that, but --

13          THE COURT:  Why don't you bring it up *ex parte*.  If I

14     disagree with it being *ex parte*, I'll let you know before I

15     post anything to the docket, but go ahead if you think it's

16     that kind of issue to raise it and we'll take it from there.

17     All right?  We'll take it one step at a time.

18          Mr. Delva?

19          THE DEFENDANT:  Yeah.  I had also mailed you about the

20     situation about what I asked him just now so I don't know.  You

21     should be getting a letter within this week, probably by

22     tomorrow.

23          THE COURT:  All right.  Well, I've not received a

24     letter from you.

25          THE DEFENDANT:  I sent it in Tuesday morning.

E941delc

1    THE COURT:  Yes.  And sometimes the mail from the --

2    you're at the MCC or MDC?

3    THE DEFENDANT:  MCC.

4    THE COURT:  Even from next door, for reasons I don't

5    know, it takes a little while.  It goes through whatever it

6    goes through.  Make sure that I hear whatever you want to hear

7    about if it's *ex parte* before Monday, all right?  Because

8    Monday we're starting trial.

9    THE DEFENDANT:  How do I know that it's been sent?

10    THE COURT:  I don't have any control over that either.

11   The mail situation is whatever the mail situation is.  So my

12   deputy I see is dialing, which means he's going to check with

13   our mailroom and find out if we have it.  If not, perhaps,

14   Mr. Pittell, if you know the content, you could raise that in

15   the *ex parte* letter as well.  All right?

16    MR. PITTELL:  I haven't seen the letter.

17    THE COURT:  All right.  We'll take it one step at a

18   time.

19    The mail hasn't come yet today.  All right.

20    All right.  Anything further?

21    MR. PITTELL:  I just wanted to speak to Mr. Poscablo.

22    (Counsel conferring)

23    THE COURT:  All right.  Then we are adjourned.  Thank

24   you.

25    ALL COUNSEL:  Thank you, your Honor.