USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 13, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA

　　- v. -

DAVID DELVA,

　　　　　　　　　Defendant.
-----------------------------------------------------------------X

12 Cr. 802 (KBF)

MEMORANDUM
OPINION & ORDER

KATHERINE B. FORREST, United States District Judge:

Defendant David Delva was convicted of five counts arising from his participation in a robbery and kidnapping occurring over the course of three days in the Bronx in early September 2012. On November 24, 2014, David Delva moved pro se for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, alternatively, a judgment setting aside the verdict and granting a new trial pursuant to Rule 33. ("Pro Se Mot.") On December 16, 2014, defendant also moved by counsel for a judgment of acquittal ("Def. Mem.") and on January 5, 2015, he filed a pro se motion requesting a Fatico hearing.

These motions primarily argue that the testimony of the Government's cooperating witness, Gregory Accilien, lacks sufficient corroboration, is "incredible on its face" (Def. Mem. 2), and is insufficient to sustain a conviction. In his pro se motions, defendant also argues that the Court erred in denying his motion to suppress evidence seized at the time of his and Accilien's arrests, claiming that FBI Special Agent Reynolds and NYPD Detective Deloren committed perjury with

1

respect to the search at 832 South Oak Drive and destroyed evidence in order "to secure a conviction". (Pro Se Mot. 4.) Delva also claims that the use of certain narcotics evidence at trial, which was obtained from the residence of co-conspirator Jean-Philippe, "confused the jurors" and caused Delva to be convicted of a narcotics distribution conspiracy. (Pro Se Mot. 8.) In his reply papers, received on February 11, 2015, Delva adds that (1) Accilien committed perjury regarding testimony about Delva's HTC phone, (2) Detective Deloren committed perjury by declaring that Accilien gave him permission to search the apartment, (3) the female victim committed perjury by claiming she was raped. (Reply Mot. 4.) Delva further requests a Fatico hearing, which he states "correspond[s] with the Rule 29 and 33 pro se motion" (Fatico Mot. 1) based on the "contradicting testimonies" of Accilien and the law enforcement witnesses (Fatico Mot. 2).

For the reasons that follow, each of Delva's motions are DENIED.

I.  FACTUAL BACKGROUND

On September 8, 2014, trial commenced against Delva on the following eight counts: (1) conspiracy to commit Hobbs Act robbery of an individual (the "Male Victim") believed to be in possession of drugs and drug proceeds in or about September 2012, in violation of Title 18, United States Code, Section 1951; (2) the substantive Hobbs Act robbery of the Male Victim in or about September 2012, in violation of Title 18, United States Code, Sections 1951 and 1952; (3) conspiracy to commit kidnapping of the Male Victim and another individual (the "Female Victim") in or about September 2012, in violation of Title 18, United States Code, Section

1201(c); (4) the substantive kidnapping of the Male and Female Victims in or about September 2012, in violation of Title 18, United States Code, Sections 1201 and 1202; (5) the use and carrying of firearms during and in relation to, and possession of firearms in furtherance of, the robbery offenses charged in Counts One and Two and the kidnapping offenses charged in Counts Three and Four, in which firearms were brandished, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 2; (6) conspiracy to distribute and possess with the intent to distribute controlled substances, namely "crack" cocaine and marijuana, from at least in or about September 2012 through on or about June 4, 2013, in violation of Title 21, United States Code, Sections 841 and 846; (7) the use and carrying of a firearm during and in relation to, and possession of a firearm in furtherance of, the drug trafficking offense charged in Count Six, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(C)(i), and 2; and (8) the unlawful possession of a firearm and ammunition by a felon, in or about June 2013, in violation of Title 18, United States Code, Section 922(g)(1).

On September 18, 2014, the jury returned its verdict, convicting Delva on Counts One, Three, Six, Seven and Eight.

II.   STANDARDS OF REVIEW

    A.   Rule 29

A defendant challenging the sufficiency of the evidence bears a heavy burden. United States v. Gaskin, 364 F.3d 438, 459 (2d Cir. 2004). The standard of review is

exceedingly deferential. United States v. Hassan, 578 F.3d 108, 126 (2d Cir. 2008). Because Delva was found guilty by the jury at trial, the Court views the evidence in the light most favorable to the Government, crediting every inference that could have been drawn in the Government's favor and deferring to the jury's assessment of witness credibility and the weight to be given to the evidence. See United States v. Chavez, 549 F.3d 119, 124 (2d Cir. 2008). Under this standard, a jury verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Persico, 645 F.3d 85, 105 (2d Cir. 2011); United States v. Chang–An Lo, 851 F.2d 547, 554 (2d Cir. 1988). Where the jury has been properly instructed on alternative theories of liability, the reviewing court must affirm where the evidence is sufficient under any of the theories. United States v. Masotto, 73 F.3d 1233, 1241 (2d Cir. 1996).

    B.    Rule 33

Rule 33 provides that a district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). The question for the Court is whether manifest injustice would result if it allows a guilty verdict to stand. See United States v. Snype, 441 F.3d 119, 140 (2d Cir. 2001). In connection with a Rule 33 motion, a court may weigh evidence and assess the credibility of witnesses, but it should only intrude upon the jury's function of assessing a witness's credibility in exceptional circumstances. United States v. Thompson, 528 F.3d 110, 120 (2d Cir. 2008). Such exceptional circumstances exist, for example, when testimony is "patently incredible or defies physical realities."

United States v. Cote, 544 F.3d 88, 101 (2d Cir. 2008) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)).

III.  DISCUSSION

    A.    Testimony of Gregory Accilien

Delva's Rule 29 motion is largely based on the defendant's view as to the credibility of Accilien. The jury disagreed with this view as does this Court. The defendant's characterization of Accilien's testimony as mere "speculation" (Def. Mem. 24) contrasts with the overwhelming evidence of Delva's guilt.[1]

Accilien testified over the course of three days, beginning on September 8, 2014, and concluding on September 10, 2014. He was subject to lengthy cross-examination. His detailed recounting of the crime was incriminating, and it was likely credited by the jury in reaching its guilty verdict on five of the eight counts in the Superseding Indictment. Accilien was corroborated by the physical evidence found at the scene of the crime, including DNA evidence; by additional evidence found at his and Delva's apartment at the time of their arrests; by telephone records; and, at least in part, by the testimony of the victims themselves, to the extent they were even able to discern what was happening over the course of that weekend.

As an example, physical evidence collected at the Magenta Street apartment matches up with Accilien's testimony. Accilien explained that he purchased duct

---

[1] One such challenge to Accilien's testimony is that he "impliedly accused Delva of raping the female victim". (Def. Mem. 33-35.) In fact, Accilien did not testify about the Female Victim's rape at all. Furthermore, defendant's attempt to discredit the female victim's testimony at trial because of supposed minor inconsistencies (Reply. Mot. 4-5) is offensive in light of the evidence and immaterial in light of the fact that defendant was not accused of rape.

tape and latex gloves from Rite Aid at the direction of Jean-Philippe; the Female Victim heard one of the robbers ask for those items (Tr. 634).  Accilien described how he saw the duct tape used on the Victims (Tr. 110-111, 132, 140-41); the NYPD's Evidence Collection Unit found pieces of duct tape on the floor of the apartment and the Victims identified it as the duct tape that bound them (Tr. 649-50; GX 113).  Accilien testified that he witnessed Delva beat the Male Victim with a mop stick (Tr. 141-42); the Male Victim testified that he was beaten with a mop stick (Tr. 748).  Accilien testified that all of the co-conspirators – including Delva – put on the latex gloves Accilien had purchased (Tr. 132, 142); the Male Victim recalled the robbers wearing latex gloves (Tr. 739).  Criminalist Cooke testified about the mixture of DNA found on one of the latex gloves recovered from the crime scene, and explained that Delva contributed to this mixture.  (Tr. 490; GX 1003.)

      Defendant also claims that Accilien's testimony is at odds with the testimony of the Male Victim because he did not recognize Delva as one of the robbers.  The Male Victim, however, testified that he could not see the person who beat him because he had duct tape on his eyes.  (Tr. 748-49.)  The Male Victim was able to loosen the duct tape a bit, but testified that he could not manage to identify those who beat him.  (Tr. 745-46, 749.)

      In addition, defendant claims that Accilien committed perjury by claiming that defendant never had an HTC phone during the robbery, despite there being pictures in evidence taken by an HTC phone.  (Reply. Mot. 4.)  The issue with the cellphones was primarily dealt with at the start of the trial, in a pro se motion

seeking reconsideration of the Court's ruling on the defendant's motion to suppress the contents of certain cellular telephones. The Court denied defendant's motion for reconsideration, and the Government made clear on the record that no additional phone was seized or searched (Tr. 11-16, 929-32). The defense was free to cross-examine Accilien and the law enforcement witnesses (which it did) about the existence of this phone and whether it was seized. The defense also had an opportunity to deal with this issue when the first jury note asked for evidence about the existence of defendant's cellphones.

The defense also attempts to discredit Accilien's testimony because of his lengthy medical and psychiatric history (Def. Mem. 3-4), but those conditions were fully explored for an entire day at trial (Tr. 211-447). Accilien explained his conditions and treatment to the jury both on direct (Tr. 120-22) and in great detail on cross-examination. Accilien testified that his conditions had no impact on his perception of Delva's criminal activity. He testified that: (1) he can tell the difference between reality and delusion (Tr. 456-57); (2) he can tell the difference when someone is actually speaking, as opposed to hearing voices in his head (Tr. 447-48); (3) he can tell the difference if a voice in his head is directing him to do something, as opposed to when a real person is giving him a direction (Tr. 448); (4) he can tell the difference between a visual hallucination and when he is actually seeing something real (Tr. 448); (5) he was taking his prescribed medication at the time of his trial testimony (Tr. 121); (6) he was taking his prescribed medication at the time he and Delva participated in the robbery and kidnapping in September

2012 (Tr. 121); and (7) he has no doubt in his mind that Delva participated in the robbery and kidnapping in September 2012 (Tr. 456-57).

Finally, the defendant's arguments that Accilien's testimony required additional corroboration from another testifying witness is wrong. Defendant misunderstands and misapplies the "two-person" rule that is applicable in certain perjury cases. It is true that Accilien's guilty plea includes a false statement charge. As a result of Accilien's plea to this count, Delva asks the Court to apply what he refers to as "the two-witness rule" to this case, which the defense explains is an "exception recognized in perjury cases," whereby "a conviction may not be based on the uncorroborated testimony of a single witness" (Def. Mem. 31). This rule, however, is intended for perjury prosecutions, not for situations such as this. "The general rule in prosecutions for perjury is that the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment." Weiler v. United States, 323 U.S. 606, 607 (1945) (quoting Hammer v. United States, 271 U.S. 620, 626 (1926)) (emphasis supplied). Here, Delva is not charged with perjury and he flatly misapplies the principle.

B.     Narcotics Distribution Conspiracy

Delva claims in his pro se motion that the evidence used to convict him of conspiracy to distribute narcotics was insufficient in large part because it "was not found in my house." (Pro Se Mot. 8). In addition to the testimony of Accilien that he distributed drugs with Delva, the drugs found on Delva at the time of his arrest, and the text-messages with customers from Delva's cellphone, the Government also

8

showed evidence seized from Jean-Philippe's apartment. (GX 401- 424.) This physical evidence included "crack" cocaine, a sale, packaging materials, plates and razors, and packaged marijuana. The evidence was appropriately admitted at trial. Accilien testified that Delva, Jean-Philippe, and the other co-conspirators each received a "cut" of the robbery proceeds, including the stolen 6 pounds of marijuana, which they intended to resell. (Tr. 191-92.)[2] Accilien also testified that he dealt drugs with both Jean-Philippe and with Delva, and that he steered Jean-Philippe's "crack" cocaine and marijuana customers to Delva after Jean-Philippe's arrest (Tr. 193-95). This evidence was sufficient to sustain the conviction.

C. Rule 33 Motion

A Rule 33 motion is not an appropriate forum to revisit an evidentiary issue that the Court already decided. Delva merely re-litigates the arguments he raised before this Court in his suppression motions—namely, that the gun and drugs entered into evidence were not in plain view, and Accilien did not give Detective Deloren permission to search the apartment. (Pro Se Mot. 2-3; Reply Mot. 4.) However, "a Rule 33 motion is an inappropriate vehicle to relitigate the trial court's earlier evidentiary decisions." United States v. Soto, No. 12 Cr. 566 (RPP), 2014 WL 1694880, at *7 (S.D.N.Y. Apr. 28, 2014) (citing United States v. Smith, No. 08

---

[2] Delva seeks a Fatico hearing concerning the six pounds of marijuana and "crack" cocaine attributable to him. (Fatico Mot. 3.) There is no need for such a hearing. In cases where "the drug quantity seized does 'not reflect the true scale of the offense,' both the Guidelines and the law of this Court specifically authorize sentencing courts to 'approximate' the total quantity involved. In reaching an approximation, a sentencing court is not limited to the evidence adduced at trial but may instead 'rely on any information it knows about,' and its approximation need only be supported by 'a preponderance of the evidence.'" United States v. Rawls, 393 Fed. Appx. 743, 747 (2d Cir. 2010) (citations omitted).

Cr. 390 (BSJ), 2009 WL 4249120, at *8 (S.D.N.Y. Nov. 25, 2009) and <u>United States v. Castro</u>, 669 F. Supp. 2d 288, 293-94 (E.D.N.Y. 2009)).

IV. CONCLUSION

For the reasons stated above, defendant's motions are DENIED.

SO ORDERED:

Dated: New York, New York
February 13, 2015

_____
KATHERINE B. FORREST
United States District Judge